USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/13/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ALICE ANN JUNG, et al.,          :
                                 :
                  Plaintiffs,    :
                                 :   01 Civ. 6993 (RMB)(THK)
         -against-               :
                                 :   **MEMORANDUM OPINION AND**
                                 :   **ORDER**
JANET C. NESCHIS, ROBERT P. LITTMAN, :
and MARYLIN DIAMOND,             :
                                 :
                                 :
                  Defendants.    :
------------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

On August 13, 2007, this Court issued a Report and Recommendation on Defendants' Motion to Dismiss the Complaint and Defendants' Motion for Sanctions ("Report"), which was adopted in full, on September 21, 2007, by United States District Judge Richard M. Berman.[1] In the Report, this Court recommended that Defendants' Motion to Dismiss the Complaint be denied, but granted, in part, Defendants' Motion for Sanctions. The sanctions imposed against Plaintiffs related to Plaintiffs' discovery conduct with respect to their expert neurologist - Dr. Fred Plum. Among the sanctions imposed, which are detailed in the Report,[2] was an order by the Court to "to pay all of Defendants' costs associated with procuring their two expert reports refuting Dr. Plum's opinion, as

---

[1] The Report was amended to correct a typographical error on October 23, 2007.

[2] Familiarity with the extensive history and background of this case, as explained in the Report, is assumed.

1

COPIES MAILED
TO COUNSEL OF RECORD ON 6/13/08

well as the fees incurred in preparing to depose Dr. Plum."
(Report, at 35.)

The parties have been unable to agree among themselves as to the amount which Plaintiffs should pay. Accordingly, Defendants have submitted to the Court their Application for Award of Experts' Costs, Legal Fees, and other Costs. For the reasons set forth below, the Court orders Plaintiffs to pay Defendant Robert Littman's legal fees of $2,272.50, and Defendants Janet Neschis and Marylin Diamond's fees and costs totaling $214,654.01.

## BACKGROUND

In the course of pursuing litigation regarding the probate of the estate of Mrs. Natasha Gelman ("Mrs. Gelman"), Plaintiffs obtained the expert opinion of Dr. Plum, who concluded that Mrs. Gelman was suffering from severely advanced Alzheimer's Disease as of 1995, and lacked testamentary capacity in early 1992, when she made significant changes to the instrument controlling the testamentary distribution of her assets. As the result of troubling conduct by Plaintiffs with respect to Dr. Plum's expert report, the Court ordered that Plaintiffs pay Defendants' legal costs and fees associated with Dr. Plum's role in this litigation, together with other sanctions not at issue here.[3] Defendant submitted an itemization of their fees and costs to Plaintiffs, in an effort to

---

[3] The award of Defendants' fees and costs was also a function of the Court's granting Plaintiffs' request to secure new experts, in lieu of Dr. Plum.

2

resolve the issue without Court intervention. Those efforts were unsuccessful and Defendants now seek resolution of the issue by the Court.

Plaintiffs do not contest the legal fees incurred by Defendant Robert Littman, amounting to $2,272.50. (See Affirmation of John Horan in Opposition to Counsel for Defendants' Motion for an Award of Fees and Costs Relating to Expert Opinions and Deposition of Dr. Fred Plum, dated Jan. 22, 2008 ("Horan Aff."), ¶ 2.) Plaintiffs also do not contest Defendants Janet Neschis and Marylin Diamond's request for costs in the amount of $90,800.00, related to securing their own experts' rebuttal of Dr. Plum's opinions, or for other costs in the amount of $9,526.90. (See id.) Furthermore, Plaintiffs do not contest the hourly rates charged by Kaye Scholer, Defendants' attorneys. (See id. ¶ 3.)

Rather, Plaintiffs question the time spent by Kaye Scholer attorneys, and the need for two senior partners (Mr. Paul Curran and Ms. Jane Parver), three associates (Ms. Maris Veidemanis, Mr. Andrew Solow, and Mr. Joshua Reisberg), and a paralegal (Mr. Weston Daniel), who worked a total of 295.82 hours and charged fees totaling $163,324.45, allegedly to prepare for the deposition of one expert psychiatrist, Dr. Plum. (See id.) Plaintiffs argue that one senior partner - Mr. Curran - and one associate - Mr. Solow - would have been sufficient to prepare for Dr. Plum's deposition, and that $98,470.00 in legal fees would therefore be

3

reasonable.

In support of their position, Plaintiffs ask the Court to take into consideration that Dr. Plum has been their expert in this litigation since 1998, and that Dr. Plum's data, analysis, and opinions have been well known to Defendants throughout this and other related litigation. While they agree that Mr. Curran might need sixty-three hours "to get ready for a witness he has had nearly seven years to think about . . . and that an experienced associate would be helpful" (id. ¶ 5), Plaintiffs also suggest that Defendants' experts and lawyers "will now have little preparation to do for the next examination of plaintiffs' new expert witnesses," and that "there is absolutely no new material to review." (See id.) Plaintiffs also argue that they have always acted in good faith, notwithstanding this Court's conclusion that their actions were sanctionable.

In response to Plaintiffs' arguments, Ms. Parver, of Kaye Scholer, contends that the fees Defendants incurred are reasonable and should be awarded in full. She asserts that the case was staffed according to the skills and expertise of each lawyer, and their work was divided into two tasks: 1) preparing expert reports rebutting the opinions of Dr. Plum, and 2) preparing for the deposition of Dr. Plum. (See Affirmation of Jane W. Parver in Support of Application, dated Jan. 7, 2008 ("Parver Aff."), ¶ 27.) She also points out how critical Dr. Plum was to Plaintiffs' case,

4

and thus, the importance of Defendants' work in defending against Plaintiffs' claims. (See Reply Aff., ¶ 8.) Furthermore, the sums being applied for are the actual amounts paid by Kaye Scholer's clients, reflecting the discounting which occurs prior to invoices being submitted to the clients. (See Parver Aff., ¶¶ 20, 21, 30.)

Finally, Defendants counter Plaintiffs' allegation that there is no need for any further work with respect to the new experts, by pointing to recent, additional abuses of discovery, and noting that Plaintiffs' replacement expert reports appear to rely on a previously undisclosed CT scan, undated and unsigned narrative statements by Jerry Jung, and videos made by Plaintiffs of the discussions with Dr. Plum, "to confirm his ability to continue" with this case - all of which would have been responsive to previous discovery requests. (See id. ¶ 9; see also Ex. F, letter from Plaintiffs' attorney, dated Dec. 5, 2008, listing new materials being provided because they were relied upon by Dr. Blum and referred to in his report.)

## DISCUSSION

Courts have wide latitude in determining what constitutes reasonable attorney's fees. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117 (2d Cir. 2007). However, "[h]ours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (citing Hensley v.

Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983)). If the court finds that the fee applicant's hours were excessive, the court may decrease the award, either by eliminating compensation for specific unreasonable hours or by making across-the-board percentage cuts in the total hours for which reimbursement is sought. See Hensley, 461 U.S. at 434, 103 S. Ct. at 1939-40; Kirsch, 148 F.3d at 173; New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983).

The Court has reviewed the billing records and invoices in support of each category of costs and fees for which Plaintiffs seek reimbursement. Plaintiffs appear to concede that the time spent by Mr. Curran and Mr. Solow in preparation for Dr. Plum's deposition was reasonable, and are prepared to concede that the related $98,470.00 in legal fees is a reasonable amount. The Court finds the limited work done by Ms. Veidemanis and Mr. Reisberg, as well as Mr. Richards, the paralegal, to be reasonable and sees no reason to separately exclude their hours from the fee award. Moreover, the Court does not agree that Kaye Scholer's fees should be reduced because the work done to prepare for Dr. Plum has reduced the amount of work necessary to prepare for Plaintiffs' two replacement experts. Plaintiff is simply attempting to reargue a position the Court has already decided - that Defendants are entitled to recover the fees and costs incurred by Defendants to address the now-inadmissable opinions and expert reports prepared

by Dr. Plum.[4]

Plaintiffs' primary argument is that Ms. Parver's sixty-three hours of work were redundant and excessive, in light of the nearly sixty-three hours spent by Mr. Curran in preparing for Dr. Plum's deposition. But that argument only addresses part of the work for which Defendants are entitled to recover fees. Defendants are also entitled to recover fees for the time spent with their own experts in preparation for rebutting Dr. Plum's opinions, and for the time spent preparing to challenge the admissibility of Dr. Plum's opinions - activities which primarily occupied Ms. Parver's and Ms. Veidemanis's time. Defendants' responsive expert reports are lengthy and detailed, evidencing significant time spent in their preparation. (See Ex's. B & D, annexed to Parver Aff.) Therefore, Defendants are entitled to recover fees incurred by Ms. Parver related to preparing Defendants' experts' responses to Dr. Plum's opinions.

Nonetheless, the Court is not prepared to award the full amount of Kaye Scholer's fees. While Defendants may be willing to pay handsomely for their very able representation by Kaye Scholer, in the Court's view, $163,324.45 in attorney's fees, corresponding

---

[4] In any event, as Defendants point out, Plaintiffs appear to continue to supplement their discovery production in conjunction with their two new experts' reports. (See Reply Aff., ¶ 9.)

7

to close to 300 hours of attorney work,[5] in relation to deposing and rebutting the views of a single expert, is excessive and unreasonable to impose on an adversary (keeping in mind that the $90,800.00 spent in securing the reports of Defendants' own experts, is a cost being shifted to Plaintiffs in full).

Accordingly, the Court concludes that a thirty percent reduction in Kaye Scholer's fees is appropriate. To a large extent, the reduction corresponds to the time spent by various Kaye Scholer attorneys in conference with each other.[6] While in no way disparaging the value of such conferences, the Court finds it is not reasonable to shift the costs of those conferences to Plaintiffs.

Thus, the Court finds that Plaintiffs should reimburse Defendants for Kaye Scholer's legal fees in the amount of

---

[5] This number of hours is equivalent to nearly 38 eight-hour work days.

[6] It appears that Defendants may have done some discounting for overlapping time. However, block entries for hours spent by Ms. Parver, when engaged in multiple activities including consultation with Mr. Curran and Mr. Solow, do not appear to have been similarly discounted. (See, e.g., Ex. G: compare Parver, J. W. entry dated 11/28/06, for 4.25 hours: "Conf. A. Solow and B. Meyers; conf. A. Solow re: expert report, including t/c P. Curran; t/c P. Curran;" with Curran, PJ entry dated 11/28/06, for .92 hours: "Review of Meyers report and notes concerning same; telephone conference J. Parver concerning report;" and compare Parver, J.W. entry dated 11/30/06, for 4.50 hours (with redactions): "e-mails A. Solow and P. Curran re: expert reports; confs. A. Solow and Dr. Foster; t/c P. Curran;" with Curran, PJ entry dated 11/30/06, for .75 hours: "Telephone conference J. Parver concerning experts; reviewing portions of Foster and Meyers reports.")

8

$114,327.11, together with expert costs of $90,800.00, and other legal costs of $9,526.90, for a total of $214,654.01.

## CONCLUSION

For the reasons set forth above, Plaintiffs' are ordered to pay Robert Littman's legal fees in the amount of $2,272.50, and Defendants Janet Neschis and Marylin Diamond's fees and costs totaling $214,654.01. Fifty percent of the awarded costs and fees ($108,463.25) must be made within thirty days of the date of this Order.[7] The remainder of the award shall be paid within sixty days of the date of this Order.

SO ORDERED.

_____
Theodore H. Katz
United States Magistrate Judge

Dated:   June 12, 2008
         New York, New York

---

[7] Plaintiffs' were ordered to pay $40,000 in advance of this ruling before discovery proceeded with respect to their two new experts. (See Order, dated Dec. 18, 2007.) The Court has not received notice that Plaintiffs have paid Defendants $40,000; but, if Defendants have been paid, then the $40,000 should be credited to the first additional payment due within thirty days.

9